Good morning, counsel. Good morning. May it please the court, my name is Dirk Van Osdaal, and I represent the appellants Michael J. Mandelbrot and the Mandelbrot Law Firm in this matter. I'd like to reserve five minutes of my time for rebuttal, if I may. I'll try to help you, but keep your eye on the clock, please. I appreciate it. Thank you. The Bankruptcy Court granted enforcement of a settlement agreement in this case that it acknowledged that it did not have jurisdiction to enter on its own, absent agreement of a settlement agreement. Now, those terms substantially restrain Mr. Mandelbrot's practice of his profession. I don't understand that it didn't have the power to enter on its own. It made findings of fact that this case settled after two days of trial. And according, as I understand the judge's opinion, it would have ended on the third day. It settled on the second day, and when he rejected on the record the effort to get out of the settlement, he said that he would have made findings of fact about what I'll loosely call misconduct that were entirely consistent with what your client had stipulated to. And if he had made those findings of fact, he could have entered the order. With respect, we disagree that Mr. Mandelbrot agreed to any misconduct. The issue in the trial in the adversary proceeding was the reasonableness of the Thorpe Trust's findings, and only those two trusts. The problem with the settlement agreement is that it went beyond the scope of the pleadings in the case and brought in two other trusts that were the subject of the jurisdiction of the Northern District Bankruptcy Court. Well, that's a separate issue. But so as to the Thorpe Settlement Trust, I don't understand what the problem is. Because the scope of the relief that was granted by the settlement agreement was outside of the scope of the complaint, and this Circuit's, this Court's authority – I don't understand how it was without the scope of the complaint. They wanted – they wanted – is this bar the right word? They wanted him not to be able to submit to – they claimed that he was submitting claims, which, to use a loose word, were not kosher. Well, they wanted to find that he was unreliable in filing claims against the Thorpe Trust. The allegations in the complaint had nothing to do with the Plant Trust, which had not even opened for claims yet, and had nothing to do with the Western Trust, which was the subject of the Northern District Bankruptcy Court proceeding. So are you just challenging that? I think that if any terms of the settlement agreement, which were material, are void, then the whole agreement is void. Under the California law, it's clear. Under the Civil Code, I believe it's good in Section 1608. So your whole argument depends on the fact that the settlement agreement included two trusts that weren't a party to the actual complaint in the Bankruptcy Court, and therefore the whole thing goes down. Not just the non-parties, but also the fact that it sought relief and got relief beyond that. The only relief requested was a declaration that he was unreliable and equitable relief. What happened is that the settlement agreement terminated Mr. Mandelbrot's representation of clients that he already had with these non-party trusts, and he also had to transfer those cases to another attorney. And he was precluded from filing claims against those trusts, and they weren't even parties to these proceedings. They have their own TDPs. You answer my question so that your argument is really dependent on the fact that the Western, and I guess it was the Plant Trusts, were not originally parties to the proceeding in the court, and the stipulation covered them. I'm sorry. Your Honor, that is one of the bases. There are the other bases, too. As far as I understand, that's what you're saying. Yes. That is one of the bases for the relief that we're requesting in this court. What role, counsel, does the case of Golden v. California Emergency Physicians Medical Group play? This was decided after the Bankruptcy Court's decision. Correct. What role does it play? What role should it play in our decision? Well, I think that case was decided before the district court made its decision in this case. It was brought to the attention. Appellees filed a five-page brief on Golden with that court. It's inexplicable that the court did not address that authority in its decision. But we think that Golden provides a clear roadmap. I mean, it's a very carefully reasoned decision and shows a lot of judicial restraint. Golden didn't decide the issue. It sent it back to the district court to decide whether the restrictions were substantial. But there's a difference, as I see it, between Golden and this case, because in Golden, Golden had made a claim of, I guess, some sort of discrimination, having nothing to do with his ability to practice medicine and treat patients. And as part of the settlement, they gave him money and they said, go away. In this case, we're dealing with conduct that's directly related to his competence to practice law. And it seems to me that the restriction, if viewed in that light, is entirely reasonable. I think that Golden is not materially different because the issue before the court was, did Section 1600 limit itself only to non-compete clauses? But what was the basis for the remand? The basis for the remand, well, Your Honor, the basis for the remand was for further proceedings to find out if the restraints were of a substantial character on the professional practice of the plaintiff in that case. Right. And assuming that it was on all fours, why isn't that the same here? I think that it is on all fours, and I think that this case should also be sent back. Why is it substantial? Why is it substantial? The substantiality is, there was no analysis of the bankruptcy court as to what the effect on Mr. Mandelbrot's practice was. We can't know. Well, we know what the effect was as to these three trusts. He couldn't submit claims, phony claims, on behalf or any other claims because he was not regarded as trustworthy to those three trusts. With respect, we reject the characterization of the claims as phony. Well, take a look at page 54 or 55 of the, I think it's that, of the excerpts from the record. And the judge makes his own findings independent of what Mr. Mandelbrot had stipulated to. The judge was not entitled to make the findings at that stage of the proceedings under Rule 52. Well. There had been no opportunity by Mr. Mandelbrot to take the stand, to introduce his. That was his fault. He decided to settle the case when the time came for him to take the stand, and he entered into a stipulation, disrupts the whole trial, and then comes back two or three days later and says, no, I want to withdraw it. Well, with respect, Section 16600 is intended to protect the weak from the folly of their own agreements, and that policy of the State of California applies. And Mr. Mandelbrot falls within the weak? In this case, it does. He was under duress in these proceedings. He lost confidence. What was the duress? The duress was that he was apparently losing the case. No, he had lost confidence in the ability of his attorney to represent him. And his attorney had managed to get most of his evidence. And when did he lose confidence? Why did he? The judge asked him expressly on the record, aside from the representation made by the attorney, that the stipulation was agreeable to him, and he said yes. And then two or three days later, he says, oh, I changed my mind. I believe he said hesitantly yes, which is identical to the facts in Golden, where the plaintiff said he reluctantly agreed. So Section 16600 is intended to protect parties from voluntary agreements that they've made. That's the whole purpose of the policy. The problem in this case is it went outside of the scope of the pleadings involved non-party trust. There's no evidence of any of the claims filed against the plant trust because it hadn't even opened. The western trust was not part of these proceedings. There's no evidence of unreliable ability with respect to those trusts, and those trusts are independent creatures under Nevada law. It may be, but this was a settlement. And as far as I understand, the western trust was a trust that was, among other things, providing the administrative services to the three trusts that were parties. And the plant trust, as I understand it, hadn't yet opened for business in terms of accepting claims, but had an interlocking, interlocking may be too strong a word, overlapping number of similar advisors that the other two trusts had. And as long as the case was being settled and he was getting benefit, I don't know why as part of a settlement that could not be included. Don't forget, unlike Golden, which was not in which the penalty had nothing to do, which the prevention of him for practicing his profession had nothing to do with his ability or competence to practice medicine, here you're dealing with a lawyer, with issues that reflect on the lawyer's competence to practice law. In fact, I don't understand why there hasn't been disciplinary proceedings brought yet or has there based on the stipulation and the judge's findings. Well, the only issue is unreliability, and it's unreliability with respect to the trust that had brought the adversary proceedings. That's all that was issued at the trial. Western and plant were not involved. I'd like to get to some points, if I may, that I had for our argument here. I just want to point out that the appellees are asking for an exception to Section 1600 based upon that this case is outside of the context of non-competent employment agreements. This case does involve employment. Mr. Mandelbrot had already been employed by individuals to file claims for Western and plant trusts. He was required to transfer those cases to another attorney and precluded from getting any future employment from individuals or law firms that might wish for him to file claims against those trusts. With respect to these three trusts and to others when he settled, because the claims that he was filing were phony or misleading or wrong. We disagree with that characterization. Let's go back to the Golden case. Suppose that as part of the settlement he acknowledged that he had not treated patients carefully or properly, and therefore they didn't want to have anything more to do with him. They could not enter into such a settlement agreement? No, he could not, Your Honor. I'd like to reserve the balance of time, if I may, for rebuttal. You can, but if my colleagues have any further questions, I can ask them. No, go ahead. Okay, why don't you save that and we'll ask additional questions when you come back for rebuttal. Thank you. Thank you, Judge Smith. Good morning and may it please the Court. It's my privilege to represent the Thorpe Trusts on this appeal, and here the bankruptcy court did not abuse its discretion in approving and enforcing a settlement that was reasonably related to protect the trust's legitimate interests. Counsel, can I ask you this question? I practiced law in California for many years and did a lot of 1600 things with respect to covenants not to compete. Golden clearly extends that beyond the traditional non-compete setting, but it deals in a concept of reasonableness. As I read the settlement and what the judge said in this case, it seemed to me that in a way this is perhaps a divisible situation. With respect to your clients, it seems to me they're clearly barred. It's a settlement, it's reasonable as to them, but you have the issue of the state bar rule of professional conduct 1-500 and other restrictions that suggest that it's pretty tough, unless you get disbarred, to bar him with respect to other people. What is your position with respect to severability? So if the court upheld this with respect to your clients based on the settlement agreement but found that based on the state bar rule it was unreasonable as to other people, what would your position be about that? Well, Your Honor, we believe that the settlement is fully enforceable as to all four trusts, and I would like to take a second and maybe go through why. First, Your Honor, the complaint itself and the action that was brought was based upon a very extensive letter that the trust had sent to Mr. Mandelbrot, and that letter was sent on behalf of all three of the extant trusts. It's a May 24th letter. It's included in our supplementary excerpts of record at tab 5, and that letter was written on behalf principally of the two trusts that I represent, as well as Western Asbestos, and that letter indicated that there was a finding, first, as to Western Asbestos, that Mr. Mandelbrot was unreliable based upon the claims that had been filed there. And second, in addition... Western had actually filed a complaint against him, which was not seeking his disbarment but asked for other matters, and that was dismissed without prejudice. Yes, it was dismissed. The judge's view at a status conference was that the complaint was premature because at that point in time the trusts had not indicated a remedy that they were seeking. What they sought initially when they filed the complaints was declaratory relief because of the counteraccusations that Mr. Mandelbrot had brought, that he had indicated that he thought that the trusts were acting corruptly and therefore that he might bring claims against them. So the trusts in part brought the actions in the northern district and the southern district to validate the manner in which they had acted and to validate their findings. But the point that I'm trying to make here is that Western was all tied up in this from the get-go first. It was part of the letter. The Western managing trustee was in the courtroom. The court made an express finding with respect to that. Western had found that Mandelbrot was unreliable. The judge found in her findings number 6 and 10 at ER 25 and 26 that all four trusts had common trustees, common futures representatives, and claim handling facilities. The judge found at finding 10, ER 26, that Mandelbrot's defenses included contentions, argument, and evidence related to all four of the trusts. And as I indicated, the May 2014 letter from Mr. Snyder indicated that there was substantial information to support the conclusion that some of the unreliable evidence submitted to the three trusts was fabricated or manipulated intentionally or with conscious disregard for its accuracy and was therefore fraudulent. So the trusts were acting, all four of the trusts were acting to protect themselves from this behavior, and they entered into a settlement. And I think there are two things with respect to that settlement. First, there is no California case or federal case that we have found or that appellants cite that indicates that a non-party cannot be subject to a settlement by its consent. Let's say we agree with that. I still get back to the point. With respect to your clients and your co-colleagues' clients, I get that. That seems pretty clear that everybody was informed. The judge made certain findings. It's reasonable. But I'm troubled by the limitation on practice outside of those trusts. Let me just quickly read. The California Rule of Professional Conduct 1-500 says, An attorney shall not be a party to an agreement whether in connection with the settlement of a lawsuit or otherwise if the agreement restricts the right of a member of the State Bar of California to practice law. And the case of Academy of California Optometrists, Inc. indicates that the law provides a contract which violates the canons of professional ethics may for that reason be void. So with that context, why should we, with respect to people other than your clients, enforce a settlement agreement that purports to limit Mr. Mandelbrot's ability to practice law elsewhere? Now, this is totally separate from the State Bar. The State Bar takes action. That's separate.  Thank you, Your Honor. Well, Rule 1-500 has been interpreted authoritatively by the Supreme Court, the California Supreme Court in Howard v. Babcock. And the court in that decision enunciated a test that is essentially a rule of reason test. And that is that the court said, in that case, I think it dealt with whether withdrawing partner could solicit clients and things like that or compete with the firm. And the court said that a restraint on competition among partners is permissible only to the extent that it protects the reasonable interests of the business seeking the restraint. And that's you. And that's... Your clients, clearly. I'm talking about people other than your clients. Well, Your Honor, with respect, whether they're my clients or not, those two trusts had substantial reason to believe that they needed protection from Mr. Mandelbrot. And, therefore, this constraint on him is reasonable under 1-500. And it was reasonable for them to seek that protection, first because, as to Western, there had already been an express finding by that trust that he had unreliable... Perhaps I'm not being clear. I'm not quarreling with Western. Let's say all four people are covered because they've had dealings with him. They don't trust him. They want protection. I'm talking about people other than the four. My understanding is that you're taking the position that this man is not permitted to practice law with respect to claims involving other trusts, other defendants. I'm sorry, Your Honor. I misunderstood the scope of the court's question. We do not assert any interest in Mr. Mandelbrot's ability to practice law with respect to any trust other than the four who are the subject of the settlement. If we uphold the agreement with respect to your trust, the four, and find that it's reasonable under Golden, you don't have any problem with that. Arguably, it's a severable deal, basically, a severable contract. Is that correct? Your Honor, I don't know what element of the contract would have to be severed. I don't believe that there is any element, there's no element of this contract that purports, on behalf of the four trusts that are involved, to restrain Mr. Mandelbrot's practice of his profession. Can I ask you about the Golden case? How was it first framed to the district court? Your Honor, the decision came down, and on behalf of ourselves, we filed a notice of supplemental authority with the district court that I think is included in the SER. We indicated at that time that the decision was subject to a request for en banc review and request for rehearing, and we argued that it was distinguishable in a very, very short pleading. And then when the decision came final and the mandate was issued, there was ultimately in that case, I think, a limited rehearing or a slight modification to the opinion or something, but no en banc review. Then we alerted the district court to that fact. My friends did not make any filing in the district court with respect to that decision. But then the district court issued its decision about almost five months after Golden came out, and the district court made no mention of the case, unless I missed something. No, Your Honor. I read the court's opinion the same way, in that it did not expressly address that case. But I think implicitly it did. The Golden case, as we've argued, is a case that deals with a particular public policy that California has identified. Actually, two public policies, really. One, covenants not to compete, and second, the employment relationship. There is an entirely different strain of California law that deals with agreements that could have the effect of restraining trade but that do not involve those public policies. The leading case is the Western Distillery case, and we alluded, I think, in the brief to that case. And there are subsequent cases, not all of which cite that case, but hold the same thing, the worker training reimbursement cases and so forth. So under California law, the way 16600 is typically interpreted is you go through two doors. If there's public policy implicated, like competition or the employment relationship, you go through that door. But under Western Distillery, if public policy is not implicated, you go through another door, and the other door asks you whether or not the provision is necessary to protect the legitimate interests of the party protected by the provision. And so I think the court was implicitly addressing that constellation of arguments when it said that no public policy supports allowing, I think, and I'm going to misquote it, but an unreliable claim filer to put the trust corpus at risk. And so I think the court recognized that Golden was there, but implicitly directed itself through the other door, the Western Distillery door, in finding that the public policy that was at stake with respect to those cases was not present here. Thank you. Do you agree that California law applies? I can't think of a reason myself. It's conflicting precedent as I view it in the Ninth Circuit, but I can't think of a reason of policy why California law should apply here. This is a bankruptcy proceeding. It deals with essentially a fraud on an entity that was created as a result of a bankruptcy reorganization. The trusts were technically formed under Nevada law, and it seems to me that there's a distinct federal interest here of not allowing entities such as this asbestos trust to be defrauded. And why should California law govern? I mean, the restatement, it always struck me that the restatement of the law of conflicts was designed essentially to deal with conflicts between different states. And here we have a settlement agreement that's designed essentially to protect the integrity of an entity that's being supervised in bankruptcy and created as a result of a Chapter 11 proceeding. Your Honor, we did not urge an interpretation of the contract that wouldn't depend on state law and didn't find, I would say, a great deal of helpful case law for the point that the court is making. But intuitively it seems correct that although we argued it somewhat differently, the way we viewed it was that California has no public policy interest in determining whether or not a lawyer is filing improper claims against the Nevada trust. I mean, the happenstance was that the bankruptcy reorganizations took place in California. Even if the trust was formed in California, essentially this was a trust that was created to help an asbestos company that has asbestos liability goes into bankruptcy. There's a Chapter 11 proceeding. As a result of the settlement that derives from that proceeding, these trusts are created to provide money to beneficiaries. And here comes a lawyer who's providing essentially phony claims. And why is it that one would think that California would have an interest in making sure that lawyers who practice law don't do these things. But why is it that this cause of action, this relief should be, the validity of this relief should be governed by California law? I mean, look, this is your argument. No, I fully appreciate that, Your Honor. I think our view is that this kind of settlement doesn't implicate California law or 16600. It would be possible, as we mapped it out, to conceive of a settlement that might implicate California law and the restraint on trade if it was anti-competitive. But we completely agree that California does not have a public policy interest in this settlement and that 1600 does not apply. Now, one last question because your time is running out. You're not arguing about the enforceability of this with respect to what is a plant? Yes, we are, Your Honor. That's part of the four trusts. I thought there were three, well, go ahead. I thought there were three Thorpe Trusts. Your Honor, there are two Thorpe Trusts that were resident or supervised by Southern California Bankruptcy Courts and two 524 Trusts that were resident in Northern California Plant and Western Asbestos. We are urging that the settlement be enforced as to all four of those trusts who made it because each of them is reasonably entitled to be protected from Mr. Mandelbrot. I would also note, finally, and I know my time is winding down, but just to, if I can complete the answer, Your Honor. Complete the sentence. Thank you. Part of the reason why the settlement is reasonable is because all the trusts gave up substantial claims against Mr. Mandelbrot in the form of monetary relief, which was count two to the complaint. Thank you, Your Honor. Thank you very much, counsel. We have a little rebuttal time. Thank you. Just to be clear, we want to make sure that the court appreciates that we have no problem, the appellants have no problem with the bankruptcy court entering a judgment within the scope of the complaint in this matter and under the rules that apply. The appellees have admitted that the Western Trust was under the jurisdiction of another court and they had filed an adversary proceeding with the Northern District, which was dismissed because it was premature. So it was only the Thorpe Trusts that were at issue in the case. There was a benefit in the settlement of not having to deal with that allegation. I'm sorry, I didn't hear you at the question. You got a benefit with respect to the Western Trust. That is a benefit, but if the contract is void, that benefit has to be released. He has to release that benefit. And he's challenging this as a void agreement. And just to be clear, it was the – Why should California law apply here? Pardon me? Why should California law apply? Because the agreement was entered into in California, in Los Angeles. What? I'm sorry? What's California's interest in all of this, other than an interest in not having people submit phony claims, lawyers submit phony claims? The interest is that – well, the question needs to be asked. The interest is that California agreements made in California are generally applied – you generally apply California law under the choice of law principles. Well, that's what you're saying. Maybe in California, but this deals with – I see a distinct federal interest here in not having the process of a federal bankruptcy court defrauded. Are you saying that there's no federal interest here? I think that there may be – Could you answer the question? Yes, I can. I think that there may be a federal interest in another case where the authority of the court to enter a judgment consistent with the complaint in the case may come into play. However, that's not this case. That's not what happened in this case. Section 16-600 may come into conflict with the authority of a federal court at some point, but I don't think there's any need for this court to reach that issue in this case in order to make a decision. Did anyone on either side argue conflict of law issues with respect to the application of California law? I know that it was argued in the district court. I believe it was also argued by the appellees in the bankruptcy court. And what, if anything, did either court say about the conflict of law determination? Those courts, any court that considered it rejected that issue. The district court certainly rejected that issue. They rejected? Rejected. Did they decide that California law applied expressly and where in the record? In the record, it is in the district court's judgment on its order on the appeal from the bankruptcy court. You're saying that the district court said that California law applies after it applied choice of law provisions? Yes. Conflict of law. Yes. In fact, that argument can't be regarded as any more than a throwaway because it follows an extensive analysis by the appellees of Section 16-600 in their papers. That would be their strongest argument if it was. Let me ask my colleagues, do either have any more questions? Okay. Thank you, counsel. The case just argued is submitted. We thank you for your arguments. Thank you very much.
judges: M. Smith, Owens, Korman